**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Marcus Burnett, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) |
| | ) |
| City of Chicago, a municipal corporation, | ) |
| Officer Corey Madison (star # 7248), | ) |
| Officer Theodore Andrews, Jr. (star # 7099), | ) |
| Officer Brown (star #720), | ) |
| Officer Randal Baker (star # 2431), | ) |
| Detective Rishi Desai (star # 20198), | ) |
| Sergeant Michael Wrobel (star # 1672), | ) |
| Detective Lester Scott (star # 21470), and | ) Jury trial demand |
| UNKNOWN OFFICERS OF THE CHICAGO POLICE | ) |
| DEPARTMENT, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

NOW COMES PLAINTIFF, MARCUS BURNETT (hereinafter also "Burnett"), by his attorneys, The Winkler Group LLC, and complaining of Defendants, The City of Chicago, Officer Corey Madison (star # 7248), Officer Theodore Andrews, Jr. (star # 7099), Officer Brown (star #720), Officer Randal Baker (star # 2431), Detective Rishi Desai (star # 20198), Sergeant Michael Wrobel (star # 1672), Detective Lester Scott (star # 21470), and Unknown Officers of the Chicago Police Department (herein collectively "Defendant Police Officers"), and alleges as follows:

**Count I**
**Violation of 42 U.S.C. 1983 Fourteenth Amendment**
**Violation of Due Process/Fabrication of Evidence**
**Against**
**Madison, Andrews, Jr., Brown, Baker, Desai, Wrobel, Scott, and Unknown Officers of the**
**Chicago Police Department**

**The Parties**

1. Plaintiff Marcus Burnett at all times relevant to these proceedings is an individual and a resident of the City of Chicago, County of Cook and State of Illinois.

2. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois and is the employer of Defendant Police Officers with the City of Chicago's Chicago Police Department.

3. Defendant City of Chicago, at all times relevant to this matter, was the employer and the principal of each of the Defendant Police Officers named in this complaint, and maintained, managed, and/or operated the Chicago Police Department.

4. Defendants Madison, Andrews, Jr., Brown, Baker, Desai, Wrobel, Scott, and Unknown Officers of the Chicago Police Department at all times relevant hereto, were City of Chicago employees, employed by the Chicago Police Department.

5. At all times relevant hereto, the Defendant Police Officers were acting under color of state law and as the employee, agent, or representative of the City Of Chicago Police Department and are being sued in their individual and official capacities.

6. At all times relevant, an unknown number of unnamed City of Chicago employees ("Unknown Officers") were employed by the City of Chicago Police Department and were acting under color of state law and as the employees, agents, or representatives of the Chicago Police Department. These Defendants are being sued in their individual and

2

official capacities. Upon discovery of their identities, Plaintiff will amend the complaint to add them as Defendants.

**Jurisdiction and Venue**

7. This is an action for money damages, brought pursuant to 42 U.S.C. § 1983 and §1988.

8. Jurisdiction for Plaintiff's federal claims is based upon 28 U.S.C. §§ 1331 and 1343 (a). Jurisdiction for Plaintiff's state law claims is based upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

9. The Court has personal jurisdiction over Defendants because at least some reside in the State of Illinois and because their conduct described herein occurred exclusively in Illinois.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that Plaintiff's claims arose in this district as alleged in detail below.

**Facts Common to All Counts**

11. On November 28, 2022, at about 10:30 p.m., at 5526 S. Throop Street, Chicago, Illinois, complaining witnesses Emmanuel and Dianna were walking through an alley.

12. Emmanuel called 911 and reported that Emmanuel and Dianna had been robbed at gunpoint.

13. Emmanuel informed the 911 operator four times that the robbers took two "bookbags" that belonged to Emmanuel and Dianna.

14. Emmanuel and Dianna described the robbers as two or three black males wearing all black clothing, and they were driving a newer, silver, small four-door car.

3

15. Officers Corey Madison (star # 7248) and Theodore Andrews, Jr. (star # 7099) were two of the first officers at the scene of the robbery.

16. Officers Corey Madison (star # 7248) and Theodore Andrews, Jr. (star # 7099) saw two Black males, one wearing all black and the other wearing a blue hoodie, in the back of 5631 S. Throop Street, Chicago, Illinois, near a black Dodge Durango.

17. Plaintiff Burnett did not reside at 5631 S. Throop Street, Chicago.

18. Officer Madison (star #7248) observed Burnett go into the building at 5631 S. Throop Avenue.

19. When Burnett exited the building, Burnett was detained.

20. Burnett was wearing a blue hoodie and light black jeans.

21. None of Emmanuel's items were recovered from Burnett's person, Burnett's residence, or Burnett's vehicle.

22. None of Dianna's items were recovered from Burnett's person, Burnett's residence, or Burnett's vehicle.

23. While being driven by a police officer in a squad car to the area on the street where Burnett and two other Black men were detained and handcuffed, the police officer in the squad car exerted influence to create fabricated evidence when he asked Emmanuel whether he was robbed of tools also because tools were found. Until this time, Emmanuel had never mentioned being robbed of tools, but only a bookbag. Emmanuel replied, "tools, a bookbag, and cash". Emmanuel never specified the alleged "tools" of which he was robbed.

24. Emmanuel and Dianna identified Burnett at a show-up when the police drove them to the area where Burnett, wearing a blue hoodie and light black jeans, and two other Black men were detained and handcuffed.

25. Burnett was arrested on November 28, 2022 for the armed robbery of Emmanuel and Dianna and was placed in custody at the Cook County Jail.

26. Officer Brown (star # 720) incorrectly approved probable cause.

27. Officer Baker (star # 2431) incorrectly approved the charges against Burnett.

28. The next day, on November 29, 2022 at 10:20 p.m., while Burnett was in custody, Assistant State's Attorney Christina Senger and Detective Lester Scott (star # 21470) interviewed Dianna and recorded her statement. Dianna stated that the man who robbed her demanded of her to "give me everything."

29. Dianna stated that the robber took from her: some purses, Ardell shopping bags that had make-up in them, a wallet, state and school identification cards, debit and credit cards, her mom's crystal pendant, and a small make-up mirror.

30. Dianna stated that the man who robbed her was wearing black pants, a dark blue hoodie, had a big nose, and a black gun.

31. Dianna stated that the man who robbed Emmanuel looked like the man who robbed Dianna, was wearing a shiny, black, vintage, very rare, unique, bubble jacket, black boots, and skinny jeans. He was a light complected black man.

32. On November 29, 2022, the day after she was robbed, the man who robbed Emmanuel came to their house and was let in by Dianna's roommate who lived on the bottom floor. Dianna recognized his voice and his bubble jacket from the day before. He pulled out a gun and demanded of the roommate to "give me everything."

33. Dianna called the police on November 29, 2022 due to the robbery in her residence.

34. On November 29, 2022 at 10:42 p.m., while Burnett was in custody, Assistant State's Attorney Christina Senger and Detective Lester Scott (star # 21470) interviewed Emmanuel and recorded his statement. Emmanuel stated that the person who robbed him the day before he saw on his property earlier in the day on November 29, 2022.

35. On November 29, 2022, Emmanuel told Assistant State's Attorney Christina Senger and Detective Lester Scott (star # 21470) that Dianna also recognized the man who robbed him the day before as the same man who came into their residence on November 29, 2022 and robbed a person in their residence.

36. Emmanuel believed that the robber was someone who was known by the people who lived in Emmanuel's residence.

37. On November 29, 2022, Emmanuel told Assistant State's Attorney Christina Senger and Detective Lester Scott (star # 21470) that the man who robbed him the day before was in his bedroom and dropped a bullet, which Emmanuel retrieved and gave to the Chicago detectives.

38. On January 3, 2023, Burnett was indicted for armed robbery, aggravated robbery, and aggravated unlawful restraint, when he, on November 28, 2022, in violation of 720 Act 5 Section 18-2 (a) (1) and (2), Section 18-1 (b) (1), Section 10-3.1:

    A. took a "wallet, from the person or presence of Dianna Sotelo, by the use of force or by threatening the imminent use of force and defendant carried on or about his person or was otherwise armed with a firearm" or bludgeon and

    B. took "United States currency, book bag and tools, from the person or presence of Emmanuel Martinez, by the use of force or by threatening the imminent use of

force and defendant carried on or about his person or was otherwise armed with a firearm" or bludgeon.

39. Detective Rishi Desai (star # 20198) fabricated evidence when he testified before the grand jury:

    A. Emmanuel was robbed of two bags containing construction tools;

    B. that Emmanuel's bookbag was recovered from the basement of the house where Burnett was detained; and

    C. that two bags containing Emmanuel's construction tools were recovered from the basement of the house where Burnett was detained.

40. Detective Rishi Desai (star # 20198) knew that Burnett did not rob Emmanuel and Dianna because Detective Desai (star # 20198) knew that Burnett was in custody when Emmanuel and Dianna gave their recorded statement on November 29, 2022, stating that the man who robbed Emmanuel on November 28, 2022 came to their house on November 29, 2022 and robbed a tenant in their building.

41. No photographs were taken of the items allegedly taken from Emmanuel and Dianna and in the possession of the Chicago Police Department, and there is no specific description of the items.

42. In Burnett's criminal proceedings, Burnett requested to review the inventoried items and/or photographs of the items that were allegedly robbed from Emmanuel and Dianna.

43. Burnett was informed that the Chicago Police Department did not have any of the inventoried items and/or photographs of the items that he allegedly robbed from Emmanuel and Dianna.

44. Burnett was informed that the Chicago Police Department did not have any of the inventoried items and/or photographs of the items that he allegedly robbed from Emmanuel and Dianna because Officer Andrews (star #7099), Officer Madison (star # 7248) and/or Sergeant Wrobel intentionally destroyed and/or failed to preserve the items.

45. There is no evidence that Emmanuel's and Dianna's items were recovered at Burnett's domicile and/or vehicle; there was no link between Emmanuel's and Dianna's stolen items and Burnett's domicile/vehicle.

46. The Chicago Police Department did not have objective and unbiased evidence to corroborate Emmanuel and Dianna statements and identification.

47. The inventoried items and the location where they were recovered were tantamount to the question of whether Burnett committed the armed robbery.

48. Without the inventoried items, there was no ability to establish probable cause to arrest Burnett.

49. On or about June 22, 2023, in Burnett's criminal proceedings, Burnett filed a motion for sanctions and motion *in limine* due to the lack of items/evidence.

50. Burnett's motion to suppress was granted.

51. In Burnett's criminal proceedings, on or about July 17, 2023, Burnett filed a motion to suppress the unconstitutionally-obtained identification of him as evidence, and this motion was granted.

52. The criminal proceedings continued, and the matter was set to proceed for trial.

53. On January 19, 2024 the matter was *nolle prosequi.*

54. Burnett was released from custody on January 19, 2024.

55. Defendants Madison, Andrews, Brown, and Baker knew that there was no probable cause to place Plaintiff in custody.

56. Defendants Madison, Andrews, Brown, Baker, Wrobel, Scott, and Desai knew that there was no probable cause to arrest Plaintiff or to substantiate the charges.

57. Defendants Madison, Andrews, Brown, Baker, Wrobel, Scott, and Desai knew that there was no evidence to lawfully keep Plaintiff in custody or to substantiate the charges.

58. Although Plaintiff was arrested for armed robbery, there was no evidence that Plaintiff committed such offense.

59. Neither Defendant Madison, Andrews, Brown, Baker, Wrobel, Scott nor Desai took any action to protect Plaintiff from any of the Defendant Police Officers when Plaintiff was unconstitutionally identified by Emmanuel and Dianna, when Desai testified untruthfully before the grand jury, or when the alleged evidence was destroyed or failed to be preserved, when Plaintiff was unlawfully taken into custody or remained in custody even though each of the Defendant Police Officers had opportunities to prevent such actions.

60. Defendants Madison, Andrews, Brown, Baker, Wrobel, Scott, and Desai had the ability and duty to cause Plaintiff to be released from police custody due to the lack of probable cause but failed to do so.

61. Defendant Police Officers entered into an agreement to unlawfully seize, detain, falsely arrest, and bring false criminal charges against Plaintiff.

62. Defendant Police Officers conspired with one another to use an unconstitutional show-up so that Plaintiff was unconstitutionally identified by Emmanuel and Dianna, for Plaintiff to be falsely arrested, to bring false criminal charges against Plaintiff, and to remain in custody.

63. Defendant Police Officers lied about Plaintiff being in possession of Emmanuel's and Dianna's property.

64. Defendant Police Officers knew that Plaintiff was not in possession of Emannuel's and Dianna's possessions.

65. Defendant Police Officers knew that they had no legal cause or probable cause to detain Plaintiff in police custody.

66. Defendant Police Officers did not take steps to release Plaintiff from police custody.

67. Despite Defendant Police Officers tactics, Plaintiff refused to plead guilty or enter a guilty plea.

68. Plaintiff remained in custody at the Cook County Jail from November 28, 2022 to January 19, 2024.

69. Every one of the above-named Defendant Chicago Police Officers and Unknown Officers acting individually, jointly, and/or in conspiracy, sought to and did in fact, deprive Plaintiff of his constitutional rights, including due process and fabricating evidence.

70. Had Defendants' fabrications of evidence been documented and/or disclosed, Plaintiff would not have been held in custody or indicted and would have cast doubt on the entire police investigation and prosecution.

71. The fabricated evidence undermined confidence in the custody and indictment of Burnett, and the fabrication of the evidence violated Plaintiff's due process.

72. The misconduct displayed and promulgated and directed at Plaintiff resulted in the unjust criminal prosecution, incarceration, detention and wrongful withholding of the freedom and liberties guaranteed Plaintiff, in violation of the United States Constitution.

73. As a direct and proximate cause of the violations of Plaintiff's constitutional rights, Plaintiff suffered injuries, including but not limited to a loss of liberty, physical harm, and severe emotional distress and anguish.

74. The misconduct described in this complaint was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights as no reasonable agent, including investigators and prosecutors, would have believed such conduct was lawful.

**Plaintiff's Damages**

75. Plaintiff was under the direct control of the Cook County Sheriff for about 14 months during which time he was held at the Cook County Jail. During his incarceration, he was denied the ability to engage in gainful employment, friends were led to believe that he was an armed robber, friends and family relationships were strained, he missed birthdays, funerals, and the opportunity to parent his child, who was only one month old in November 2022.

76. Plaintiff incurred costs and expenses for his criminal defense attorney.

77. For over a year, Plaintiff knew he was innocent of the charges against him. Plaintiff's emotional pain and suffering stemming from the loss of this time has been substantial. He missed the opportunity to share holidays with family and friends, to continue romantic relationships, to visit with family and friends, and lost the fundamental freedom to live his life, unencumbered by guards holding the keys to every single door he would walk through.

78. As a result, Plaintiff has suffered tremendous damages, including but not limited to physical harm, mental suffering, and loss of a normal life.

WHEREFORE, Plaintiff prays for judgment as noted below.

## Count II
### Violation of 42 U.S.C. 1983 Fourth Amendment-Unreasonable Seizure:
### Wrongful Arrest/Pretrial Detention and Wrongful Detention
### Against Defendant Police Officers, and Unknown Officers

79. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

80. Defendant Police Officers, and Unknown Officers, knowing that probable cause did not exist, caused Plaintiff to be arrested, detained and prosecuted for serious felony charges knowing that Plaintiff was being seized and detained without probable cause for those charges, thereby violating Plaintiff's right to be free from unreasonable seizures guaranteed to him by the Fourth and Fourteenth Amendments of the United States Constitution.

81. Defendant Police Officers  and Unknown Police Officers accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate Plaintiff's unlawful detention without any probable cause, by using  evidence which they knew to be false, and in spite of the fact that they knew Plaintiff was innocent, in violation of his constitutional rights.

82.  Absent such misconduct, Plaintiff would not have been arrested, indicted, and prosecuted of armed robbery and other felony charges. There was no credible, lawful evidence giving rise to probable cause.

83. During his entire criminal prosecution, Plaintiff was detained in the Cook County Jail, at all times with significant restrictions of liberty and movement.  His restrictions on liberty were a direct result of the baseless criminal prosecution for felony charges.

84. As a direct and proximate result of the Defendants' misconduct, Plaintiff was deprived of his constitutional rights and was detained and imprisoned without probable cause and suffered damages.

85. The acts and omissions of Defendants were intentional, wanton, malicious, reckless, and oppressive.

86. Defendants' misconduct was objectively unreasonable, and Defendants acted intentionally and with willful indifference to Plaintiff's constitutional rights and innocence.

87. As a result, Plaintiff has suffered tremendous damages, including but not limited to physical harm, mental suffering, and loss of a normal life and as further stated herein.

88. For this count, Plaintiff seeks actual damages, punitive damages, pre- and post-judgment interest, reasonable attorneys' fees, costs, and any other relief the Court deems just and equitable.

### Count III
### Violation of 42 U.S.C. 1983 Fourth Amendment-Failure to Intervene
### Against Defendant Police Officers, and Unknown Officers

89. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

90. In violation Plaintiff's Fourth Amendment rights, pursuant to § 1983 as to Defendant Police Officers, and Unknown Officers failed to intervene when:

   A. Defendant Police Officers and Unknown Officers fabricated that Plaintiff was in the possession of Emmanuel's and Dianna's possessions;

   B. exerted influence over witness Emmanuel;

   C. falsely arrested Plaintiff;

   D. brought false charges against Plaintiff;

   E. created knowingly false reports;

    F.  continued to provide support to Assistant State's Attorney Christina Senger and the prosecutors so that Plaintiff would continue to be detained and prosecuted; and

    G.  showed a reckless and/or deliberate indifference to their own and/or each others' violations of Plaintiff's rights, caused the violations, and/or had knowledge of their own or each others' treatment of Plaintiff and acquiesced and are therefore liable.

91. Despite such knowledge, Defendant Police Officers and Unknown Officers failed to intervene to prevent the harm from occurring.

92. That as a direct and proximate result of one or more to the preceding acts or omissions of Defendant Police Officers and Unknown Officers, Plaintiff suffered damages.

93. The above-described conduct by Defendant Police Officers and Unknown Officers against Plaintiff was without cause or justification and violated Plaintiff's rights pursuant to the Fourth Amendment to the United States Constitution.

WHEREFORE, Plaintiff prays for judgment as noted below.

**<u>Count IV</u>**
**<u>Violation of 42 U.S.C. 1983 – Conspiracy</u>**
**<u>Against Defendant Police Officers and Unknown Officers</u>**

94. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

95. Defendant Police Officers and Unknown Officers acted in concert to induce, coerce and fabricate false evidence, and commit unlawful acts of lying about Plaintiff being in possession of Emmanuel's and Dianna's property, falsely arresting Plaintiff, bringing false charges against Plaintiff, creating knowingly false reports, continuing to provide support to the prosecutors so that Plaintiff would continue to be detained, or in the alternative, committed a lawful act by unlawful means.

96. Defendant Police Officers and Unknown Officers conspired to accomplish an unlawful purpose by unlawful means and agreed between themselves to inflict the wrongs as stated above against Plaintiff.

97. In furtherance of that conspiracy, each of the co-conspirators committed overt acts and was a willful participant in joint activity.

98. The misconduct described herein was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

99. As a direct and proximate result of this illicit agreement and overt acts, Plaintiff was injured and suffered damages.

100. For this count, Plaintiff seeks actual damages, punitive damages, pre- and post-judgment interest, reasonable attorneys' fees, costs, and any other relief the Court deems just and equitable.

**Count V**
**State claim: Malicious Prosecution**
**Against Defendant Police Officers and Unknown Officers**

101. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

102. Defendant Police Officers and Unknown Officers commenced and/or continued criminal proceedings against Plaintiff.

103. The criminal proceedings were terminated in Plaintiff's favor as they were *nolle prossed* on January 19, 2024, as so opined in *Thompson v. Clark*, 142 S.Ct. 1332 (2022).

104. There was no probable cause for such criminal proceedings against Plaintiff.

105. Defendant Police Officers and Unknown Officers misconduct, which included lying about evidence, creating knowingly false reports, falsely arresting Plaintiff, bringing false

charges against Plaintiff, and continuing to provide support to the prosecutors so that Plaintiff would continue to be detained, were acts of malice.

106.    Plaintiff was injured as a direct and proximate result of the Defendants' unlawful actions and sustained damages.

107.    For this count, Plaintiff seeks actual damages, punitive damages, pre- and post-judgment interest, reasonable attorneys' fees, costs, and any other relief the Court deems just and equitable.

**Count VI**
**State claim: Civil Conspiracy**
**Against Defendant Police Officers and Unknown Officers**

108.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

109.    Defendant Police Officers and Unknown Officers acted in concert to commit an unlawful act of lying about Plaintiff being in possession of Emmanuel's and Dianna's property, falsely arresting Plaintiff, bringing false charges against Plaintiff, creating knowingly false reports, and continuing to provide support to the prosecutors so that Plaintiff would continue to be detained, or in the alternative, committed a lawful act by unlawful means.

110.    Defendant Police Officers and Unknown Officers agreed between themselves to inflict the wrongs, as stated above, against Plaintiff, knowing that there was no basis for doing so.

111.    Defendant Police Officers and Unknown Officers' overt acts as stated above resulted in damage to Plaintiff.

112.    For this count, Plaintiff seeks actual damages, punitive damages, pre- and post-judgment interest, reasonable attorneys' fees, costs, and any other relief the Court deems just and equitable.

**Count VII**
**State claim: Intentional Infliction of Emotional Distress**
**Against Defendant Police Officers and Unknown Officers**

113.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

114.    The conduct and acts of Defendant Police Officers and Unknown Officers as set forth above were extreme and outrageous.

115.    The conduct and acts of Defendant Police Officers and Unknown Officers as set forth above were rooted in an abuse of power or authority and were undertaken with intent to cause, or were in reckless disregard of, the probability that their conduct would cause severe emotional distress to Plaintiff.

116.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with reckless indifference to the rights of Plaintiff and with total disregard for the truth and Plaintiff's clear innocence.

117.    As a direct and proximate result of Defendant Police Officers' and Unknown Officers' misconduct, Plaintiff suffered and continues to suffer grievous injuries, including loss of liberty, physical injury, psychological trauma, and emotional distress and damages, and other grievous and continuing injuries and damages.

118.    For this count, Plaintiff seeks actual damages, punitive damages, costs, and any other relief the Court deems just and equitable.

**Count VIII**
**State claim: Negligence- Negligent Spoliation of Evidence**
**Against All Defendant Police Officers and Unknown Officers**

119.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

120.    Defendant Officers claimed that Burnett was in the possession of Emmanuel's and Dianna's allegedly robbed property.

121.    Defendant Officers had a duty to preserve the alleged evidence that they had in their possession, namely, Emmanuel's and Dianna's property.

122.    Defendants intentionally and/or recklessly destroyed or failed to preserve said evidence, even though the criminal proceedings against Burnett were ongoing.

123.    The destroyed/unpreserved evidence did not include Emmanuel's and Dianna's property; that is, Defendants were never in possession of Emmanuel's and Dianna's property.  Therefore, Defendants claimed that the evidence was destroyed/unpreserved so that Burnett could not view the property and prove his innocence.

124.    At all relevant times, Defendants had a duty to preserve evidence relevant to anticipated or ongoing litigation.

125.    Defendants breached that duty by destroying and/or failing to preserve critical evidence despite being aware that such evidence was material to Burnett's innocence and defense.

126.    Defendant's actions were intentional, willful, or in reckless disregard of Plaintiff's rights and the judicial process.

127.    As a direct and proximate result of Defendant's spoliation of evidence, Plaintiff has suffered actual harm, including but not limited to:

    A.  prejudiced Plaintiff's ability to prove critical elements of his defense and/or is a

hindrance to prove or support certain claims;

B.  impeded the integrity of the judicial process;

C.  increased litigation costs;

D.  delayed the resolution of his criminal proceedings; and

E.  Other damages to be proven at trial.

128.    For this count, Plaintiff seeks actual damages, including Burnett's attorney's fees in the criminal proceedings, costs, adverse inference instruction at trial, and any other relief the Court deems just and equitable.

### Count IX
### State claim: Negligence- Willful and Wanton Misconduct
### Against Defendant Police Officers and Unknown Officers

129.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

130.    At all times relevant herein Defendant Police Officers and Unknown Officers had a duty to refrain from willful and wanton conduct in connection with their investigation of the crime of the robbery of Emmanuel and Dianna.

131.    As stated herein, it was foreseeable to Defendant Police Officers and Unknown Officers that fabricating evidence, in addition to the other misconduct alleged above, in order to bring felony charges against Plaintiff, would inevitably result in extreme harm to Plaintiff.  Avoiding this injury to Plaintiff would not have burdened Defendant Police Officers and Unknown Officers in any way.

132.    Notwithstanding that duty, Defendant Police Officers and Unknown Officers acted willfully and wantonly through a course of conduct that showed an utter indifference to, or conscious disregard of, Plaintiff's rights.

133.     As a direct and proximate result of Defendant Police Officers and Unknown Officers misconduct, Plaintiff suffered and continues to suffer grievous injuries, physical injury, psychological trauma, and emotional distress and damages, and other grievous and continuing injuries and damages.

134.     For this count, Plaintiff seeks actual damages, punitive damages, pre- and post-judgment interest, reasonable attorneys' fees, costs, and any other relief the Court deems just and equitable.

**Count X**
**State claim: *Respondeat Superior***
**Against CITY OF CHICAGO, a municipal corporation**

135.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

136.     In committing the acts alleged above, each Defendant Police Officer and Unknown Officer were members and agents of the Chicago Police Department, acting at all relevant times within the scope of their employment and under color of law.

137.     Defendant City of Chicago is liable as principal for all torts committed by its agents under state law.

138.     As a direct and proximate result of this misconduct, Plaintiff suffered injuries and sustained damages.

139.      For this count, Plaintiff seeks actual damages, pre- and post-judgment interest, costs, and any other relief the Court deems just and equitable.

**Count XI**
**State claim: Indemnificaton**
**Against CITY OF CHICAGO, a municipal corporation**

140.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

141.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

142.    Defendant Police Officers and Unknown Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

143.    Defendant City of Chicago is responsible for paying any judgment entered against Defendant Police Officers and Unknown Officers.  Plaintiff therefore demands judgment against Defendant CIty of Chicago in the amounts awarded to Plaintiff against  Defendant Police Officers and Unknown Officers as actual damages, attorneys fees, costs, and pre- and post-judgment interest pursuant to 735 ILCS 5/2-1303.

WHEREFORE, Plaintiff prays for judgment as noted below.

### Damages

Plaintiff Marcus Burnett has sustained the following damages and prays judgment be entered in his favor and against all Defendants, jointly and severally, for:

A.  Damages to compensate for all bodily harm, emotional harm, pain and suffering, loss of loss of income, enjoyment of life, and any other injuries inflicted by Defendants;

B.  punitive damages against all individual Defendants (not municipalities);

C.  statutory attorneys' fees pursuant to 42 U.S.C. § 1988 as as allowed by law;

D.  costs and expenses;

E.  pre- and post-judgment interest, including but not limited to, interest pursuant to 735 ILCS 5/2-1303; and

F.  relief deemed just and proper by this Court.

**<u>Jury Demand</u>**

Plaintiff Marcus Burnett hereby demands a trial by jury, pursuant to the Federal Rules of

Civil Procedure, 38(b), on all issues triable in this cause of action.

Respectfully submitted,

MARCUS BURNETT


By:     <u>/s/ Sheila Genson</u>
Attorney for Plaintiff Burnett

ILARDC 6208644
The Winkler Group LLC
Sheila Winkler Genson
1300 E. Woodfield Road, Ste. 150
Schaumburg, IL 60173
847-466-5280
sheila@winkler-law.com